1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

RODNEY LEE RIGGINS,

                                    Petitioner,

           vs.

AMY MILLER, Warden,

                                    Respondent.

Civil No.    13cv1447-GPC (RBB)

**ORDER:**

**(1)  DENYING MOTION FOR DISCOVERY AND EVIDENTIARY HEARING;**

**(2)  DENYING PETITION FOR WRIT OF HABEAS CORPUS; and**

**(3)  DENYING MOTION FOR CERTIFICATE OF APPEALABILITY**

## I.

## FEDERAL PROCEEDINGS[1]

         Rodney Lee Riggins (hereinafter "Petitioner"), is a state prisoner proceeding pro se and in forma pauperis with a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1.)  Petitioner was convicted by a San Diego County Superior Court jury of robbery, burglary, grand theft and petty theft, and the jury found he had personally used a deadly weapon in the commission of the robbery.  (Lodgment No. 1, Clerk's Tr. ["CT"] at 80-83.)  The trial

---

         [1]  Although this case was referred to United States Magistrate Judge Ruben B. Brooks pursuant to 28 U.S.C. § 636(b)(1)(B), the Court has determined that neither a Report and Recommendation nor oral argument is necessary for the disposition of this matter.  See S.D. Cal. Civ.L.R. 71.1(d)

judge found, after a bifurcated bench trial, that Petitioner had suffered three prior felony robbery convictions which constituted strikes under California's Three Strikes law, and sentenced him to 42 years-to-life in state prison.  (CT 187-89.)

Petitioner alleges here, as he did in state court, that his federal constitutional rights were violated because: (1) his sentence was enhanced by facts found by a judge rather than a jury; (2) his appellate counsel failed to raise several of the claims presented here; (3) the waiver of his right to a jury trial on the truth of the prior conviction allegations was invalid, and his trial counsel did not properly advise him in that respect; (4) the use of his prior convictions to enhance his sentence violated the plea bargains of those convictions; (5) trial counsel failed to investigate and challenge the prior convictions on the basis they resulted from improperly advised pleas; (6) trial counsel failed to adequately argue that the prior convictions should be stricken; (7) the prior convictions were based on pleas which lacked jury findings on, or proper admissions to, the elements of the offenses; (8) the jury was not instructed that the use of force or fear must have been motivated by an intent to steal in order to constitute robbery; (9) trial counsel failed to challenge the restitution fine; (10) the jury was improperly instructed on consciousness of guilt; (11) the prosecutor committed misconduct to which trial counsel failed to object; (12) trial counsel entered into a stipulation without Petitioner's consent; and (13) the use of the prior convictions to enhance his sentence violated the Contracts Clause of the United States Constitution, and trial counsel failed to object on that basis.  (Pet. at 14-128.[2])

Respondent has filed an Answer ("Ans.") to the Petition along with an incorporated Memorandum of Points and Authorities in support ("Ans. Mem."), and has lodged portions of the state court record.  (ECF Nos. 18.)  Respondent argues that federal habeas relief is not available because Petitioner's claims are without merit and any errors are harmless, and because the adjudication of the claims by the state court is neither contrary to, nor involves an unreasonable application of, clearly established federal law.  (Ans. at 2; Ans. Mem. at 12-50.) Petitioner has filed a Traverse.  (ECF No. 38.)

_____

[2]  When citing to documents filed with the Court's Electronic Case Filing ("ECF") system, the Court will refer to the pages assigned by that system.  When citing to Respondent's Lodgments, the Court will refer to the actual pagination rather than the page numbers printed on the documents.

Petitioner has also filed a Motion for discovery and an evidentiary hearing.  (ECF No. 12.)  Petitioner states that shortly after filing the instant Petition, he sent interrogatories to his trial counsel, who responded by sending Petitioner the trial file, including counsel's notes, and stated that his notes would be more reliable than his memory.  (Id. at 4 & Ex. A.)  Petitioner requests an evidentiary hearing on the ineffective assistance of counsel claims in order to obtain testimony from his trial and appellate counsel, or, in the alternate, discovery in order to obtain declarations from both counsel.  (Id. at 3-6.)  He seeks discovery regarding his prior convictions in order to support his allegations that the plea bargains he entered in those cases were breached by their use to enhance his sentence, and that the prior convictions themselves were insufficient for that use.  (Id. at 6.)

Respondent has filed an Opposition, arguing that Petitioner has not shown good cause for discovery and is not entitled to an evidentiary hearing.  (ECF No. 22 at 2-7.)  Respondent argues that Petitioner waived the attorney-client privilege with respect to communications with counsel, and requests Petitioner be ordered to turn over counsel's notes.  (Id. at 7-8.)  Petitioner thereafter attached his trial counsel's notes as an exhibit to the Traverse.  (Traverse at 121-38.)  Petitioner has also filed a Motion for a Certificate of Appealability.  (ECF No. 34.)

For the following reasons, the Court finds that Petitioner is not entitled to discovery, that an evidentiary hearing or expansion of the record is neither necessary nor warranted, that federal habeas relief is unavailable, and that Petitioner has not satisfied the requirements for issuance of a Certificate of Appealability.  Accordingly, the Court **DENIES** the Motion for discovery and an evidentiary hearing, **DENIES** the Petition, and **DENIES** a Certificate of Appealability.

## II.

## STATE PROCEEDINGS

In a four-count amended information filed in the San Diego County Superior Court on January 11, 2010, Petitioner was charged with robbery in violation of California Penal Code section 211; grand theft of personal property in violation of Penal Code section 487(a); petty theft with a prior in violation of Penal Code section 484; and burglary in violation of Penal Code section 459.  (CT 13-15.)  The amended information alleged as sentence enhancements that

Petitioner had personally used a deadly and dangerous weapon, a box cutter, during the robbery, that he had previously been convicted of three serious felonies which constituted strikes under California's Three Strikes law, and that he had served three prison terms. (CT 16-18.) On May 4, 2010, Petitioner was convicted on all four counts and the jury returned a true finding on the deadly weapon use allegation. (CT 184-85.) Petitioner waived his right to a jury trial on the prior conviction allegations, and the trial judge, following a bench trial, made true findings as to all of the allegations. (CT 178, 186-87.) On August 17, 2010, the trial judge denied a defense motion to strike the prior convictions, and sentenced Petitioner to 42 years-to-life in state prison. (CT 189.)  The sentence consisted of 25 years-to-life on the robbery count under the Three Strikes law, plus three consecutive five-year terms, one for each of the three prior felony convictions, plus a one-year term for the deadly weapon use finding and a one-year term for one of the prison priors; terms on the remaining counts and prison priors were ordered to run concurrently.  (Lodgment No. Reporter's Tr. ["RT"] at 814-15.)

Petitioner filed an appeal raising Claims 8 and 10 here, along with two additional claims not presented in this action.  (Lodgment No. 4.)  The appellate court reversed the grand theft conviction, finding it was a lesser-included offense of robbery, and affirmed in all other respects. (Lodgment No. 7.)  A petition for review presenting Claims 8 and 10 was summarily denied by the California Supreme Court on March 23, 2012.  (Lodgment Nos. 8-9.)  As detailed below in the discussion of the individual claims, Petitioner filed several pro se habeas petitions in the state courts raising the remaining claims presented here.

### III.

### FACTUAL BACKGROUND

The following statement of facts is taken from the appellate court opinion affirming Petitioner's conviction on direct review.  This Court gives deference to state court findings of fact and presumes them to be correct.  Sumner v. Mata, 449 U.S. 539, 545-47 (1981).

At approximately 6:00 p.m. on April 15, 2009, Riggins entered an Adidas store at the Carlsbad Premium Outlets in San Diego County.  Riggins was wearing a jacket and holding a large duffel bag.  He approached a sales associate who was at a cash register.  The sales associate handed Riggins two empty shopping bags. [Footnote: These facts are based on a surveillance video from the store.  The

record does not indicate why the sales associate handed Riggins the empty shopping bags.] Riggins then went into a footwear aisle of the store, removed a pair of shoes from a shoe box, and placed the empty box back on the shelf.

Riggins proceeded to pick up a white shirt and place it inside his duffel bag. Riggins then placed multiple pairs of shoes into the empty shopping bags. Riggins picked up his duffel bag and the shopping bags, which were now full, and walked out of the store.

Riggins did not pay for any of the merchandise that he took from the Adidas store. The total value of the stolen merchandise was $359.88.

Between 6:00 and 7:00 p.m. that same evening, Riggins walked into the Gap store at the same shopping mall. He was carrying a duffel bag that was nearly empty, and two full Adidas shopping bags.

Before Riggins entered the Gap store, Terence Wilkerson, a loss prevention agent for the Gap, noticed Riggins. The fact that Riggins was walking around the mall with an empty duffel bag caught Wilkerson's eye because, in Wilkerson's experience, people who shoplift tend to engage in this kind of behavior. Wilkerson followed Riggins into the Gap store.

Once Riggins was inside the Gap store, he entered the women's department and began looking at some women's denim pants and some shirts. He placed his bags on the floor and interacted with several of the store's sale associates. Riggins told the sales people that he needed help finding "something for his girlfriend or his wife." Riggins selected three pair of women's pants and two women's shorts, and then pulled out his wallet. Riggins told a sales associate that he did not have any money and thanked her for the assistance. He said that he would return later to pick up the merchandise.

After the sales associate headed toward the back of the store, Riggins picked up the merchandise that he had gathered with the associate's help, and took that merchandise, together with his duffel bag and the two Adidas shopping bags, over to the men's department of the store. Riggins set down his duffel bag and the Adidas shopping bags behind a building fixture, and then placed the women's clothing on top of the duffel bag. After waiting for other shoppers to leave the vicinity, Riggins bent down, unzipped his duffel bag, and put the women's clothing inside the duffel bag.

After he placed the women's clothing in the duffel, Riggins stood up, looked around, and headed toward a wall of men's denim pants. Riggins "grabbed a stack of men's denim" and placed the merchandise on top of the duffel bag. He again waited for other customers to leave the area, and then bent down and placed the pants in his duffel bag.

Wilkerson had been observing Riggins from several feet away. Based on his prior experience, Wilkerson was fairly certain that Riggins was about to leave the store with the concealed items. Wilkerson informed the store's management team that he was planning to apprehend Riggins. Wilkerson then exited the store and waited immediately outside the store, so that he could maintain an unobstructed view of Riggins.

Riggins eventually walked past the cash registers without making any attempt to pay for the merchandise that he had placed inside his duffel bag. As Riggins approached the front of the store, Wilkerson was about to apprehend him

exiting the store when a man and two children effectively "cut (Wilkerson) off." Wilkerson stopped abruptly, and Riggins also stopped abruptly. Riggins allowed the man and his children to enter the store, made eye contact with Wilkerson, turned around, and walked toward the back of the store. Wilkerson continued to wait outside.

After walking around the store, Riggins eventually walked toward the front of the store and placed his duffel bag and the two full Adidas bags on the floor, about 15 feet away from the front doors to the store. Riggins walked outside and started talking on his cell phone. Wilkerson overheard Riggins ask, "Where are you at?" and "You almost here?" Riggins then ended the call and approached Wilkerson. Riggins struck up a conversation with Wilkerson, asking him whether he worked in the area and what he did for work. Wilkerson did not want to "blow (his) cover," so he told Riggins that he worked for TaylorMade, a golf company. Wilkerson mentioned that he was waiting for his girlfriend, and the two continued to make small talk.

In the meantime, the store manager, who had noticed Riggins's "very shifty behavior" while he was in the store, had seen Riggins place the duffel bag and two Adidas shopping bags on the floor near the entrance to the store. The store manager started asking to whom the bags belonged, and Riggins entered the store and said that they were his bags. Riggins then picked up all three bags and walked out of the store.

Wilkerson approached Riggins outside the store, identified himself as the store's loss prevention agent, and said that they needed to talk about the merchandise that Riggins was concealing inside his duffel bag. Wilkerson asked Riggins if he could look inside the duffel bag to see what was in there. According to Wilkerson, Riggins became loud and obnoxious, and started to yell. Riggins denied that he had stolen anything and stated that the items in the bags belonged to him.

Wilkerson tried to grab the duffel bag, but Riggins also grabbed the bag. After trying to rip the bag from Wilkerson's hand, Riggins reached his hand into one of his pockets and pulled out a box cutter. Riggins told Wilkerson to back up, while he motioned toward Wilkerson's chest with the exposed blade. Fearing for his safety, Wilkerson let go of the bag and said, "(I)t's yours, take it."

Riggins proceeded to head north, through the mall, at "a fairly high rate of speed." He was carrying the duffel bag, which was filled with the Gap merchandise that he had not paid for, as well as the two Adidas shopping bags, which were filled with the Adidas merchandise that he had not paid for.

Wilkerson called 911 on his cell phone. He explained to the operator what had just occurred and described Riggins. While Wilkerson was on the phone with the 911 operator, he, together with Brad Hunter, an off-duty Oceanside police detective who happened to be in the Gap store when the events transpired, followed Riggins through the mall, in the direction of some nearby car dealerships. Once Wilkerson reached one of the dealerships, he no longer had Riggins in sight and told the operator that he was unable to follow Riggins any farther. A few minutes later, Carlsbad Police Sergeant Greg White met Wilkerson at the car dealership. Wilkerson described Riggins's clothing and the bags that he was carrying. Sergeant White then drove northbound and entered another car dealership, approximately a half mile from the shopping center.

At that dealership, Sergeant White spotted Riggins in between some cars in the middle of the parking lot. Riggins moved to a position behind a car where Sergeant White could not see him. Riggins then briskly walked away from Sergeant White and another officer, who was also pursuing him. Riggins became distracted by the other officer, and Sergeant White was able to catch up with him. Riggins refused to comply with Sergeant White's order to put his hands on a car. Riggins complied only when the other officer arrived with a taser. By this time, Riggins had changed his appearance. He was still wearing jeans and yellow cowboy boots that Wilkerson had seen him wearing, but he had removed a baseball cap and glasses, and had put on a white sweatshirt.

The officers arrested Riggins. Wilkerson and Hunter positively identified Riggins as the person who had taken the items from the Gap store without paying. Wilkerson also identified the duffel bag and two Adidas shopping bags as the bags that Riggins had been carrying. Officers found the bags behind one of the dealership's cars, in a different area of the dealership from where Riggins had been detained. The brown jacket that Riggins had been wearing was found lying on top of the duffel bag. Inside the duffel bag were Riggins's North County Transit District photo identification card, some of Riggins's mail and bank statements, the box cutter that Riggins had used against Wilkerson, and the Gap merchandise that Riggins had taken.

Wilkerson and a Carlsbad police officer returned to the Gap store with the merchandise that Riggins had placed in his duffel bag. The value of the merchandise was $575.11.

(Lodgment No. 7, <u>People v. Riggins</u>, No. D057957, slip op. at 2-7 (Cal.App.Ct. Jan. 10, 2012).)

**IV.**

**DISCUSSION**

For the following reasons, the Court finds that Petitioner's claims do not warrant federal habeas relief. The Court also finds that neither discovery, expansion of the record, nor an evidentiary hearing are necessary or warranted, and that Petitioner has not satisfied the requirements for issuance of a Certificate of Appealability.

**A.     Standard of Review**

As discussed below, all claims presented here, except Claim 11, were adjudicated on the merits in state court. In order to merit habeas relief, Petitioner must demonstrate that the state court adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.A. § 2254(d) (West 2006). A state court's decision may be "contrary to" clearly established

Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent." <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000). A state court decision may involve an "unreasonable application" of clearly established federal law, "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." <u>Id.</u> at 407. Relief under the "unreasonable application" clause of § 2254(d) is available "if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." <u>White v. Woodall</u>, 572 U.S. ___, 134 S.Ct. 1697, 1706-07 (2014), quoting <u>Harrington v. Richter</u>, 562 U.S. ___, 131 S.Ct. 770, 787 (2011).

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. . . . Rather, that application must be objectively unreasonable." <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75-76 (2003) (internal quotation marks and citations omitted). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the United States Supreme] Court's decisions . . ." <u>Williams</u>, 529 U.S. at 412. In order to satisfy section 2254(d)(2), a federal habeas petitioner must demonstrate that the factual findings upon which the state court's adjudication of his claims rest, assuming it rests upon a determination of the facts, are objectively unreasonable. <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003). Even if a petitioner can satisfy section 2254(d), or, as with Claim 11 here, it does not apply, Petitioner must still demonstrate a federal constitutional violation. <u>Fry v. Pliler</u>, 551 U.S. 112, 119-22 (2007); <u>Frantz v. Hazey</u>, 533 F.3d 724, 735-36 (9th Cir. 2008) (en banc).

**B.    Claim 1**

Petitioner alleges in Claim 1 that his sentence was enhanced based on two facts not admitted by him or found by a jury: (1) his identity as the person who suffered the three prior convictions alleged in the amended information, and (2) whether they constituted "strikes" under California's Three Strikes law. (Pet. at 14-15.) He alleges that the prior convictions could only

be used to enhance his sentence once those facts were established, and because those facts were found by a judge rather than a jury, he was deprived of his right to a jury trial under the Sixth and Fourteenth Amendments, as that right is articulated in Apprendi v. New Jersey, 530 U.S. 466 (2000) (holding that other than the fact of a prior conviction, any fact used to increase a sentence above the statutory maximum must be found by a jury beyond a reasonable doubt), Blakely v. Washington, 542 U.S. 296 (2004) (holding that the statutory maximum for Apprendi purposes is the maximum sentence permitted to be imposed solely by the jury verdict or a defendant's admission) and Cunningham v. California, 549 U.S. 270 (2007) (holding that California's three-tier determinate sentencing law violated the right to a jury trial to the extent it permitted a judge to impose an upper term sentence in the absence of an aggravating factor established by the jury's verdict, a defendant's admission, or a prior conviction).  (Pet. at 14-25.)

Respondent answers that Petitioner waived his right to a jury trial on the truth of the prior conviction allegations, and that in any case the right to a jury trial on the priors is a state-law right, the denial of which does not raise a federal claim. (Ans. Mem. at 19-21.) Respondent also contends that the Apprendi line of cases exempts prior convictions which, like those here, were obtained in proceedings which provided the right to a jury trial and required proof beyond a reasonable doubt.  (Id. at 21.)

Petitioner replies that his waiver was invalid, but that even if it was valid, he only waived his state law right to a jury trial as to whether the prior convictions existed, not his federal constitutional right to have the jury determine whether he was the person who was convicted and whether the priors satisfied the statutory definition of "serious" or "violent" so as to constitute strikes.  (Traverse at 11-20.)

This claim was presented to and summarily denied by the state supreme court. (Lodgment Nos. 16, 18.) Petitioner presented the same claim to the state appellate court in his pro se habeas petition, which was denied on the merits in a reasoned order.  (Lodgment No. 12 at 4-7, 28-31; Lodgment No. 13.)  The Court will look through the silent denial by the state supreme court and apply the provisions of 28 U.S.C. § 2254(d) to the appellate court opinion.  See Ylst v. Nunnemaker, 501 U.S. 797, 803-06 (1991) ("Where there has been one reasoned state judgment

rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.")  The state appellate court denied the claim, stating:

> The rule pronounced in *Apprendi* does not apply to an indeterminate sentence enhanced by prior convictions. (*Apprendi v. New Jersey, supra*, 530 U.S. at pp. 487-490.)  The holdings in *Blakely v. Washington, supra*, 542 U.S. 296 and *Cunningham v. California, supra*, 549 U.S. 270 do not change this ruling.

(Lodgment No. 13, <u>In re Riggins</u>, No. D062731, order at 1-2 (Cal.App.Ct. Oct. 25, 2012).)

Clearly established federal law provides that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the proscribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." <u>Apprendi</u>, 530 U.S. at 490.  As Petitioner points out, the Court in <u>Apprendi</u> recognized that the "prior conviction exception" arose from <u>Almendarez-Torres v. United States</u>, 523 U.S. 224 (1998), and observed that "the certainty that procedural safeguards attached to any 'fact' of prior convictions, and the reality that Almendarez-Torres did not challenge the accuracy of that 'fact' in his case, mitigated the due process and Sixth Amendment concerns otherwise implicated in allowing a judge to determine a 'fact' increasing punishment beyond the maximum of the statutory range." <u>Apprendi</u>, 530 U.S. at 488, citing <u>Jones v. United States</u>, 526 U.S. 227, 249 (1999) ("One basis for that constitutional distinctiveness is not hard to see: unlike virtually any other consideration used to enlarge the possible penalty for an offense . . . a prior conviction must itself have been established through procedures satisfying the fair notice, reasonable doubt and jury trial guarantees.")

Unlike the petitioner in <u>Almendarez-Torres</u>, however, Petitioner here did not admit in the instant criminal proceeding that he had suffered the prior convictions, and he challenges the accuracy of the trial court's findings with respect to them.  In <u>Wilson v. Knowles</u>, 638 F.3d 1213 (9th Cir. 2011), the state trial judge found three facts in relation to two prior convictions which were necessary to use those convictions as strikes to increase a sentence to 25 years-to-life, including whether the petitioner had personally inflicted bodily injury on the victim, whether that injury was great, and whether the victim was an accomplice.  <u>Id.</u> at 1215.  The Ninth Circuit found that the petitioner did not have an incentive to challenge those facts when he entered no

contest pleas in the prior convictions for driving under the influence of alcohol, and for causing bodily injury while driving under the influence of alcohol, because those facts were not necessary to convict the petitioner of the prior convictions. Id. The court found that although courts "may reasonably disagree about some of the precise boundaries of the [Apprendi] exception," it was an objectively unreasonable application of Apprendi for the state trial judge, rather than a jury, to find that the victim was not an accomplice in the prior conviction and that Petitioner had personally inflicted great bodily injury on the victim, findings which were necessary under state law to use the prior convictions as strikes. Id. at 1215-16; but see id. at 1216 (Kozinski, C. J., dissenting) (opining that it is has not yet been clearly established that the who, what, when and where of a prior conviction is exempt from the jury trial requirement, because the courts have "debated and disagreed about the scope of the [Apprendi] exception, and the Supreme Court hasn't stepped in to draw a clear line for us."); People v. Black, 41 Cal.4th 799, 819 (2007) (holding that California and numerous other jurisdictions interpret the Apprendi exception to encompass not only the fact that a prior conviction occurred, but other related issues that may be determined by examining the records of the prior convictions."); In re Richardson, 196 Cal.App.4th 647, 659 (2011) (stating that California courts are not bound by the Ninth Circuit's Wilson v. Knowles decision.)

Respondent relies on Davis v. Woodford, 446 F.3d 957 (9th Cir. 2006), in which the petitioner had been sentenced under California's Three Strikes law after the trial judge counted eight strikes arising from a single conviction which involved eight robberies, but which was obtained though a guilty plea where the petitioner was promised the conviction would count as only one strike in any future sentencing proceedings. Id. at 958. The petitioner in Davis alleged, as does Petitioner here, that he did not knowingly and intelligently waive his right to a jury trial on the truth of the prior conviction allegation, and that the plea agreement in the prior conviction was violated by its use as a strike. Id. The Davis court granted federal habeas relief on the breach of plea agreement claim, but denied relief on the waiver claim, stating that where "*only the existence of a prior conviction is at issue*," a petitioner "has no federal constitutional right to have a jury decide that question," irrespective of whether he had a state law right to a jury trial

on the prior convictions, "so long as the convictions were themselves obtained in proceedings that required the right to a jury trial and proof beyond a reasonable doubt." Id. at 963 (emphasis added).

A federal habeas court must apply clearly established federal law as "squarely established" by United States Supreme Court holdings. White, 134 S.Ct. at 1702 n.2, 1706, citing Parker v. Matthews, 567 U.S. ___, 132 S.Ct. 2148, 2155 (2012) ("[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,' . . . [and] cannot form the basis for habeas relief under AEDPA."), quoting 28 U.S.C. § 2254(d)(1).  With respect to the first "fact" challenged by Petitioner, whether his three prior California robbery convictions constituted strikes, the Court need not examine the extent of clearly established federal law regarding the Apprendi exception, because it is clear that Petitioner was not deprived of his federal constitutional right to a jury determination with respect to that fact.  Under California law, any California robbery conviction constitutes a strike.  See Cal. Penal Code §§ 667(b)-(i) & 1170.12, and §§ 667.5(c)(9) & 1192.7(c)(19).  Thus, unlike Knowles, the trial judge here did not have to find anything other than the fact of the three prior robbery convictions in order to find they constituted strikes.  The state court's adjudication of this aspect of Claim 1 did not involve an objectively unreasonable application of clearly established federal law. Davis, 446 F.3d at 963.

There are two reasons why the Court need not determine whether the Apprendi exception encompasses the trial judge's finding that Petitioner is the person who suffered the three prior robbery convictions.  First, as discussed below in Claim 3, Petitioner waived his right to a jury determination with respect to that fact.  Second, even if Petitioner's waiver was, as he alleges, invalid, and even if there was Apprendi error, federal habeas relief is not available because any error is clearly harmless.

In conducting a harmless error analysis on an Apprendi claim, relief is appropriate only if the Court is "in 'grave doubt' as to whether a jury would have found the relevant aggravating factors beyond a reasonable doubt." Butler v. Curry, 528 F.3d 624, 648 (9th Cir. 2008), quoting O'Neal v. McAninch, 513 U.S. 432, 436 (1995).  At the bench trial on the prior conviction

allegations here, the prosecutor proffered certified documents relating to robbery convictions from 1991 and 1998 which contained the perpetrator's photograph and fingerprints, along with certified copies of documents related to a 1993 robbery conviction without a fingerprint card but with the perpetrator's photograph. (RT 449-50.) The documents were introduced into evidence over defense counsel's objection that they contained extraneous information and violated the Confrontation Clause. (RT 450-54.) The court then heard testimony from a forensic technician employed by the San Diego County District Attorney's office, who was a sworn member of the Southern California Association of Fingerprint Officers and a member of the International Association of Identification, and who compared fingerprints from Petitioner's booking card for the instant offenses to fingerprints from Petitioner's prison packets and fingerprints contained in the certified copies of the 1991 and 1998 robbery convictions, and had those comparisons checked by an independent examiner. (RT 457-60.) The technician testified that in her opinion the fingerprints were from the same person. (Id.) After cross-examination and re-direct, the parties rested and the trial judge examined the documents in chambers. (RT 464.)

The attorneys then presented closing arguments. The prosecutor argued that all three prior convictions satisfied the statutory definition of a strike because they were robberies, and argued that although the certified document regarding the 1993 conviction did not contain fingerprints, it did have Petitioner's photograph, and the certified document regarding the 1998 conviction indicated that the sentence in that case had been enhanced by Petitioner's 1993 conviction. (RT 463-64; CT 17.) Defense counsel argued that the evidence was insufficient with respect to all the priors, and in particular objected to the use of the 1998 case as evidence that Petitioner suffered the 1991 and 1993 convictions, arguing that prior conviction allegations are not usually subject to sufficient scrutiny in such cases due to the informal nature of plea bargaining. (RT 465.) The trial judge then stated:

> I'm always frustrated in this situation because there is no question the prosecution has proven beyond a reasonable doubt that this defendant has suffered all these prior convictions.
>
> But is this the best evidence they could have put on? No. So I always get frustrated. I feel like finding him not guilty just so they will start doing it different and better. They never listen to me anyway, so I go back to what's my

1    responsibility here.  At this point, it's to determine the facts based on the evidence
     before me.

2

3            And again, is this the best evidence?  No.  Is it sufficient to prove beyond
     a reasonable doubt he suffered all this priors?  Yes.  [¶]  So I find each of the
     priors listed in the amended information to be true.

4

5    (RT 465-66.)

6            The Court is not in grave doubt that the jury would have answered in the affirmative had

7    they been asked to determine whether the prosecutor had proven beyond a reasonable doubt that

8    Petitioner was the person who had suffered the three prior robbery convictions.  Petitioner's

9    fingerprints were compared and examined by two independent experts and found to match the

10   fingerprints of the perpetrator identified in the certified documents regarding the 1991 and 1998

11   convictions.  Although the certified document regarding the 1993 conviction did not contain a

12   fingerprint card, it did contain a photograph of the perpetrator, and the document regarding the

13   1998 conviction indicated that the sentence in that case had been enhanced by Petitioner's 1991

14   and 1993 convictions.  The trial judge inspected those documents, which contained photographs,

15   and heard the expert testimony before finding that the prosecutor had proven beyond a

16   reasonable doubt that Petitioner had suffered all three prior convictions.  Petitioner has presented

17   no evidence, here or in the state courts, to challenge the finding that he was the person who

18   suffered the prior robbery convictions.  In fact, he admits he was convicted of the 1991 and 1993

19   robberies in the claims addressed below where he challenges his plea bargains in those

20   convictions, although such an admission, alone, would likely not satisfy Apprendi.  See United

21   States v. Cazares, 121 F.3d 1241, 1247 (9th Cir. 1997).

22           Accordingly, the Court denies habeas relief with respect to Claim 1 because, as discussed

23   immediately below in Claim 3, Petitioner waived his right to a jury trial with respect to the prior

24   conviction allegations.  The Court alternately denies relief on the basis that the state court's

25   finding that there was no Apprendi error regarding the determination of whether the priors

26   constituted strikes, did not involve an objectively unreasonable application of clearly established

27   federal law, and assuming clearly established federal law guarantees a jury determination as to

28   Petitioner's identity as the person who suffered the priors, any error is harmless.

**C.     Claim 3**[3]

Petitioner alleges in Claim 3 that he was denied his federal constitutional right to a jury trial on the prior conviction allegations because his waiver of that right was invalid, and the waiver resulted from trial counsel's deficient performance. (Pet. at 30-36.)  He alleges that the trial judge met with defense counsel in chambers without Petitioner, where counsel indicated Petitioner would waive his state-law right to a jury trial on the prior conviction allegations. (Id. at 30.)  The trial judge then asked Petitioner in open court whether he was willing to waive his jury trial right, and "[s]urprised and caught off guard, Petitioner answered in the affirmative." (Id.)  He alleges counsel did not discuss the issue with him and did not make it clear he had a say in the matter, and that he believed the issue had already been decided in chambers and he merely agreed on the record that the right had been waived. (Id.)

Respondent answers that Petitioner has presented no evidence to overcome the strong presumption that trial counsel's conduct fell within the wide range of reasonable professional assistance. (Ans. Mem. at 24-25.)  Respondent also argues that because Petitioner personally waived the right on the record after being advised by the trial judge, he is unable to demonstrate prejudice from counsel's alleged failure to advise him. (Id.)

Petitioner replies that, as alleged in his discovery motion, he tried and failed to obtain admissions from his trial counsel regarding counsel's conduct with respect to the waiver, and argues that resolution of this claim is premature before the record is expanded with a declaration from counsel or an evidentiary hearing. (Traverse at 18.)  He also contends that the trial judge's advisements were ineffective due to the sequence of events, that is, he believed in his mind that the right had already been waived when the trial judge informed him that he had the right to have a jury decide the truth of the prior conviction allegations. (Id. at 19.)

Petitioner presented Claim 3 to the state supreme court in a habeas petition, which was summarily denied without a statement of reasoning or citation of authority. (Lodgment No. 15 at 5; Lodgment No. 18.)  The same claim was presented to the state appellate court in a habeas

---

[3] Petitioner alleges in Claim 2 that his appellate counsel was deficient in failing to raise Claims 4, 5, 6, 9 and 12 presented here. (Pet. at 26-29.)  The Court will consider Claim 2 after it has addressed these other claims.

petition. (Lodgment No. 12 at 14-16.)  The Court will look through the silent denial by the state supreme court and apply 28 U.S.C. § 2254(d) to the appellate court opinion, which stated:

> Petitioner's argument that his rights were violated by a waiver of the right to a jury trial on his prior convictions is unfounded.  Petitioner properly submitted a waiver to jury trial on these allegations.  His claim fails.

(Lodgment No. 13, In re Riggins, No. D062731, order at 2.)

After the jury was selected and just before testimony began, the following exchange took place outside the presence of the jury:

| | |
|---|---|
| The Court: | Counsel, it's my understanding that one or both of you want to put something on the record? |
| Defense Counsel: | Yes.  I believe I discussed this with the Court in chambers.  Should there be a conviction on any of the counts that requires the priors, proof of the priors, my client will be waiving jury and have those matters decided by the Court. |
| The Court: | All right.   Mr. Riggins, you understand if there were a conviction, you would have a right to a jury trial on the issue of your prior convictions.  In other words, the same jury would then hear evidence as to whether or not each of those prior convictions is true or not.  Your attorney indicates that you're willing to waive that right to have a jury decide and have me decide on the priors.  [¶]  Is that what you wish to do? |
| The Defendant: | Yes, that's correct your Honor. |
| The Court: | All right.  And, Mr. Stone [defense counsel], you agree with the jury waiver? |
| Defense Counsel: | I do. |
| The Court: | People agree to waive jury on that issue? |
| Prosecutor: | Yes, your Honor. |

(Lodgment No. 3, Reporter's Tr. ["RT"] at 10.)

Clearly established federal law provides that "[t]he right to a jury trial, conferred by the Constitution, is waivable, as long as the waiver includes the consent of the government counsel, the sanction of the court, and the 'express and intelligent consent of the defendant.'"  Crosby v. Schwartz, 678 F.3d 784, 788 (9th Cir. 2012), quoting Patton v. United States, 281 U.S. 276, 312 (1930), overruled on other grounds by Williams v. Florida, 399 U.S. 78, 92 (1970).  The record

here clearly reflects that Petitioner was informed that he had a right to a jury trial on the prior conviction allegations, and that he  indicated he wished to waive that right.

Although Petitioner alleges that he was taken by surprise and believed the trial judge and defense counsel had agreed to the waiver without his input, he does not explain why he then sat through the entire jury trial, and the bench trial on the priors, without objecting to the waiver. See White v. McGinnis, 903 F.2d 699, 703 (9th Cir. 1990) (en banc) (holding that a party's "knowing participation in a bench trial without objection is sufficient to constitute a jury waiver.")  After the jury was excused following the return of their verdicts, the trial judge asked the parties how long they expected the bench trial on the priors would take.  (RT 447.)  When both counsel indicated it could be done that afternoon, the trial judge stated:

> It will take some time because I expect her [referring to the prosecutor] to prove, put on proof sufficient beyond a reasonable doubt to prove that this body here in court [referring to Petitioner] belongs to whatever papers she intends to introduce, sometimes they have a difficult time doing that.  So we'll see.

(RT 448.)

Thus, when the trial judge indicated that he would require the prosecution to prove beyond a reasonable doubt that Petitioner was in fact the person who had suffered the prior convictions alleged in the amended information, however difficult it may be and however long it took, Petitioner stood silently by and did not object that he had been rushed into waiving his right to a jury trial on that issue.  Petitioner later addressed the trial judge at the sentencing hearing, but did not complain about any aspect of the trial, much less the waiver.  (RT 805-08.) The record supports a finding that Petitioner was advised by the trial judge that he had a right to have a jury determine the truth of the prior conviction allegations, and knowingly and intelligently waived that right in order to have the determination made by the trial judge, who held the prosecution to proof beyond a reasonable doubt and found the allegations true in the face of expert testimony and documentary proof that Petitioner had suffered the priors.  The state court's finding that the waiver was valid is not contrary to, and does not involve an unreasonable application of, clearly established federal law, and is not based on an unreasonable determination of the facts in light of the evidence presented in the state courts.

Petitioner also contends he received ineffective assistance of counsel because trial counsel did not discuss the jury trial right, or the strategy behind the decision to waive that right, and therefore Petitioner never fully understood or appreciated the right he was waiving or the consequences of the waiver.  (Pet. at 26-32.)  For ineffective assistance of counsel to provide a basis for habeas relief, Petitioner must demonstrate two things.  First, he must show that counsel's performance was deficient.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Id.  Second, he must show counsel's deficient performance prejudiced the defense, which requires showing that "counsel's errors were so serious as to deprive [Petitioner] of a fair trial, a trial whose result is reliable."  Id.  To show prejudice, Petitioner need only demonstrate a reasonable probability that the result of the proceeding would have been different absent the error.  Id. at 694.  A reasonable probability in this context is "a probability sufficient to undermine confidence in the outcome."  Id.  Petitioner must establish both deficient performance and prejudice in order to establish constitutionally ineffective assistance of counsel.  Id. at 687.

"Surmounting Strickland's high bar is never an easy task."  Padilla v. Kentucky, 559 U.S. 356, 371 (2010).  "The standards created by Strickland and section 2254(d) are both highly deferential and when the two apply in tandem, review is 'doubly' so."  Richter, 131 S.Ct. at 788 (citations omitted).  These standards are "difficult to meet" and "demands that state court decisions be given the benefit of the doubt."  Cullen v. Pinholster, 563 U.S. ___, 131 S.Ct. 1388, 1398 (2011).  Federal habeas relief functions as a "guard against extreme malfunctions in the state criminal justice systems," and not simply as a means of error correction.  Richter, 131 S.Ct. at 786, quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979).

Petitioner is unable to demonstrate prejudice resulting from his counsel's alleged failure to fully advise him of the ramifications of the waiver because he has not shown that it is reasonably probable that the result of the sentencing proceeding would have been different had the prior conviction allegations been presented to the jury.  As discussed above, Petitioner's fingerprints were compared and examined by two independent experts and found to match the

fingerprints of the perpetrator identified in the certified documents of the 1991 and 1998 prior convictions. There was also a certified document regarding the 1993 prior conviction which was examined by the trial judge which contained a photograph of the perpetrator. Finally, the documents showed that Petitioner's 1998 sentence had been enhanced by his 1991 and 1993 convictions. Petitioner did not object at any time to a bench trial, and the trial judge held the prosecutor to the standard of proof beyond a reasonable doubt.

Accordingly, Petitioner's allegation that trial counsel did not properly advise him of the consequences of waiving his right to a jury trial on the prior conviction allegations, even if true, fails to demonstrate he received constitutionally ineffective assistance of counsel. See Richter, 131 S.Ct. at 791 ("Representation is constitutionally ineffective only if it 'so undermined the proper functioning of the adversarial process' that the defendant was denied a fair trial."), quoting Strickland, 466 U.S. at 686. Petitioner is not entitled to habeas relief because he has not alleged an extreme malfunction in the state court with respect to the waiver of his right to a jury trial, because the trial judge explained the right to Petitioner, who then acknowledged that right and failed to object when the skeptical trial judge sternly ensured that the prosecutor had proven the prior conviction allegations beyond a reasonable doubt. Richter, 131 S.Ct. at 786.

In addition, Petitioner is not entitled to discovery in order to obtain the records of his prior convictions or to obtain an affidavit from trial counsel regarding the waiver. Discovery under Rule 6(a) of the Rules Governing Section 2254 Cases is available only "for good cause," which is shown "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." Bracy v. Gramley, 520 U.S. 899, 908-09 (1997), quoting Harris v. Nelson, 394 U.S. 286, 300 (1969). Neither discovery nor an evidentiary hearing is necessary where, as here, the federal claim can be denied on the basis of the state court record, and where the petitioner's allegations, even if true, do not provide a basis for habeas relief. Campbell v. Wood, 18 F.3d 662, 679 (9th Cir. 1994). As set forth above, Petitioner's allegations regarding his waiver, even if true, do not establish a federal constitutional violation, and do not establish that he was prejudiced by counsel's alleged failure to properly advise him regarding the waiver.

Furthermore, because this claim was adjudicated on the merits in state court, this Court must make its § 2254(d) determination based solely on the evidence presented to the state court. Pinholster, 131 S.Ct. at 1398. Petitioner can only proceed to develop additional evidence in federal court if § 2254(d) is satisfied, which it has not been here, or, possibly, if there is new evidence which transforms an already-exhausted claim into a new claim which has not been adjudicated on the merits in the state court, in which case § 2254(d) arguably would not apply. Id. at 1401 n.10; Stokley v. Ryan, 659 F.3d 802, 808-09 (9th Cir. 2011). Petitioner has not identified any new evidence which, even if it was available through discovery or an evidentiary hearing, would transform this or any other claim presented here into a new claim which has not been adjudicated on the merits in state court.

**D.    Claim 4**

Petitioner alleges in Claim 4 that the use of his prior convictions to enhance his sentence violated the plea bargains of those convictions. (Pet. at 37-44.) He states he pleaded no contest to robberies in 1991 and 1993, and that a "condition of the agreements, implied from the law then existing, was that each conviction would result in only a five year enhancement if Petitioner were subsequently convicted of a new offense." (Traverse at 21.)

Respondent answers that Petitioner is incorrect to contend that his sentences on the prior convictions were increased, because clearly established federal law provides that punishment as a recidivist does not violate any federal constitutional provision. (Ans. Mem. at 25-26.) Petitioner replies that he is not complaining that the sentences from his prior convictions were increased, but is alleging that his current sentence contravened his reasonable expectations arising from the prior plea agreements. (Traverse at 21.)

Petitioner presented Claim 4 to the state supreme court in his pro se habeas petition. (Lodgment No. 15 at 6.) The state supreme court summarily denied the petition without a statement of reasoning or citation of authority. (Lodgment No. 18.) Petitioner did not present this claim to any other state court, and, absent an indication otherwise, this Court must presume that the silent denial by the state supreme court was an adjudication on the merits of the federal constitutional claim presented. See Richter, 131 S.Ct. at 784-86 ("When a federal claim has

been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.")  This Court "must determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of" the Supreme Court.  Id. at 786.

Clearly established federal law provides that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such a promise must be fulfilled."  Santobello v. New York, 404 U.S. 257, 262 (1971).  Petitioner has not alleged that his no contest pleas in the prior convictions were induced by promises made by the prosecutor, but merely alleges that the version of California's Three Strikes law in effect at the time "implied" that the convictions would not be used to enhance future sentences by more than five years.  (Pet. at 37.)  Petitioner has not alleged a violation of the prior plea bargains because he has not alleged he was induced into the plea by a promise from the prosecutor.  See Davis, 446 F.3d at 961 (holding that a Santobello claim requires the plea to be induced by a promise from the prosecutor), citing Mabry v. Johnson, 467 U.S. 504, 509-10 (1984), disapproved of on other grounds in Puckett v. United States, 556 U.S. 129, 138 n.1 (2009).  Any subsequent amendment of California's Three Strikes law to permit those priors to be used to impose a life sentence does not violate clearly established federal law.  See Witte v. United States, 515 U.S. 389, 400 (1995) ("In repeatedly upholding such recidivism statutes, we have rejected double jeopardy challenges because the enhanced punishment imposed for the later offense 'is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes,' but instead as a 'stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one.'")  As discussed below in Claim 13, Petitioner's allegation that then-existing pre-three strikes California law was incorporated into the 1991 and 1993 plea agreements, and those agreements were thereafter breached by the 1994 enactment of the Three Strikes law, is without merit.  See Davis, 446 F.3d at 962 ("We recognize that, in California, contracts (including plea bargains), are 'deemed to incorporate and contemplate not

only the existing law but the reserve power of the state to amend the law or enact additional laws.'"), quoting <u>People v. Gipson</u>, 117 Cal.App.4th 1065, 1070 (2004).

The state supreme court's silent denial of this claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law, because the state court could have reasonably found, consistent with <u>Santobello</u>, <u>Witte</u> and <u>Davis</u>, that Petitioner failed to allege a violation of the plea bargains in his prior convictions.  <u>Richter</u>, 131 S.Ct. at 784-86. Petitioner's speculation that examination of those plea agreements might aid in the resolution of this claim is insufficient to show good cause for discovery or an evidentiary hearing. <u>Pinholster</u>, 131 S.Ct. at 1398; <u>Bracy</u>, 520 U.S. at 908-09; <u>Campbell</u>, 18 F.3d at 679.

**E.     Claim 5**

Petitioner alleges in Claim 5 that he received ineffective assistance of counsel when trial counsel failed to investigate and challenge the prior convictions on the basis they resulted from no contest pleas during which he was not properly advised of the rights he was waiving or the elements of robbery.  (Pet. at 45-61.)  Respondent answers that to the extent Petitioner seeks to have this Court declare his prior convictions invalid, such a claim is foreclosed because he is no longer in custody under those convictions.  (Ans. Mem. at 26-27.)  Respondent similarly argues that Petitioner has not alleged ineffective assistance of counsel because he has not shown the prior convictions were open to challenge at trial.[4]  (<u>Id.</u> at 27-28.)

Petitioner replies that he is not asking this Court to find that his prior convictions are invalid, but argues that trial counsel should have challenged their use to enhance his sentence. (Traverse at 25.)  He argues that his ineffective assistance of counsel claim is cognizable on federal habeas, and seeks discovery of the records of his prior convictions.  (<u>Id.</u> at 25-27.)

---

[4] Respondent cites <u>Lackawanna Co. Dist. Atty. v. Coss</u>, 532 U.S. 394 (2001), where the Supreme Court held that a state prisoner proceeding in a federal habeas action pursuant to 28 U.S.C. § 2254 generally cannot challenge the constitutional validity of prior convictions used to enhance his current sentence where the petitioner is no longer in custody under those prior convictions. <u>Id.</u> at 403-04 ("[W]e hold that once a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid.")  The only exception is if the prior conviction involved a failure to appoint counsel in violation of the Sixth Amendment.  <u>Id.</u> at 404. Although Petitioner alleges he received inadequate advice of counsel in his prior pleas, he does not allege he was <u>denied</u> counsel in connection to those pleas.  Thus, even if a liberal construction of the pro se Petition includes a challenge to the validity of the prior convictions, habeas relief is not available.

Petitioner presented this claim to the state supreme court in a habeas petition which was summarily denied without a statement of reasoning or citation of authority. (Lodgment No. 15 at 6-8; Lodgment No. 18.) He did not present this claim to any other state court, and the Court will presume the silent denial of the claim was an adjudication on the merits. <u>Richter</u>, 131 S.Ct. at 784-86. The Court must determine what arguments or theories could have supported the state court's decision, and "ask whether it is possible fairminded jurists could disagree" that such arguments are inconsistent with a prior Supreme Court case. <u>Id.</u>

Petitioner alleged in state court, as he does here, that if his trial counsel had investigated, he would have learned that Petitioner was not aware of the elements of robbery prior to pleading guilty in 1991 and 1993, was not properly advised of the constitutional rights or defenses he was giving up in pleading guilty, and that if he had been so advised he would not have pleaded guilty in those cases and would have insisted on going to trial. (Lodgment No. 15 at 6-8.) He contends he could have argued that the force or fear element was missing in the 1991 robbery because as he was leaving the store with stolen goods, it was the store security agent who initiated contact with Petitioner's moving car as Petitioner was fleeing, and not Petitioner who initiated contact with the security guard with his car. (<u>Id.</u> at 8-9.) He contends he could have made a similar argument that he did not actually have a gun during the 1993 robbery when he told a store security officer who had confronted him in the parking lot to stop following him because he had a gun. (<u>Id.</u>) A pre-trial psychological evaluation prepared at trial counsel's request, and presented here by Petitioner, states in part:

> Mr. Riggins has a consistent pattern of criminal charges . . . includ[ing] Robbery, Receiving Stolen Property, Grand Theft, Petty Theft, Insufficient Funds, Checks, Assault, Battery, Possession of Marijuana for Sale, Use/Under Influence of Controlled Substance, and Possession of Controlled Substance Paraphernalia. . . . [¶] Regarding several of his earlier felony convictions, Mr. Riggins said, "Whenever force and fear are involved they jack up the charge. Most (of my prior convictions) were burglaries, but the force and fear bring it up to robbery. For example, (my first felony) I was in the car with the stolen merchandise and the security guard jumped on the car and when I backed up, he rolled off. This turned a petty theft into a robbery. The second (felony) stemmed from me stealing a microwave oven out of a Payless store and when employees were trying to get the merchandise back, I refused. I told them, 'Don't follow me, I have a gun.' This was the force and fear."

(Traverse at 101.)

Thus, trial counsel had a psychological report prepared which reflects Petitioner's belief that the force or fear element had been improperly or unfairly satisfied in his prior robbery convictions. The state supreme court could have reasonably found that trial counsel did not fail to investigate whether the prior robbery convictions were open to challenge on the basis that Petitioner had not been properly advised regarding the force or fear element in those cases. See Strickland, 466 U.S. at 690-91 ("[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary" and such decisions "must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.") The state court could also have reasonably rejected this claim on the basis that Petitioner could not establish prejudice from counsel's actions because he failed to establish a reasonable probability that counsel could have successfully challenged the prior plea agreements on the basis that Petitioner failed to understand the elements of robbery or the rights he was giving up by entering the no contest pleas. Lackawanna, 532 U.S. at 403-04; Blackledge v. Allison, 431 U.S. 63, 73-74 (1977) ("[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity.")

The state court's silent denial of this claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law. Richter, 131 S.Ct. at 784-86; Strickland, 466 U.S. at 687, 694. Discovery and an evidentiary hearing are not available with respect to Claim 5 because Petitioner has not alleged facts which, if true, demonstrate he received ineffective assistance of counsel. Pinholster, 131 S.Ct. at 1398; Bracy, 520 U.S. at 908-09; Campbell, 18 F.3d at 679.

**F.      Claim 6**

Petitioner alleges in Claim 6 that he received ineffective assistance of counsel when trial counsel failed to adequately argue that the trial judge should exercise his discretion to strike the prior convictions. (Pet. at 62-71.) Specifically, he alleges counsel should have sought to strike one or two of the priors instead of all three, failed to argue that the priors were non-violent, and

1   failed to challenge the prosecutor's statements that Petitioner had multiple violent felony

2   convictions, a pattern of violence, and an affinity for weapons.  (Id.)

3      Respondent answers that Petitioner clearly falls within the spirit of the Three Strikes law,

4   and there is no reasonable probability that had counsel presented the arguments identified by

5   Petitioner the sentence would have been any different.  (Ans. Mem. at 28-32.)  Petitioner replies

6   that because the judge relied on the violent nature of Petitioner's criminal record in pronouncing

7   sentence, the omitted arguments may have been persuasive.  (Traverse at 31-33.)

8      Petitioner presented this claim to the state supreme court in a pro se habeas petition which

9   was summarily denied without a statement of reasoning or citation of authority.  (Lodgment No.

10  15 at 8-9; Lodgment No. 18.)  He did not present the claim to any other state court, and the Court

11  will presume the state supreme court's silent denial of the claim was an adjudication of the

12  merits.  Richter, 131 S.Ct. at 784-86.  The Court must determine what arguments or theories

13  could have supported the state court's decision, and then "ask whether it is possible fairminded

14  jurists could disagree that those arguments or theories are inconsistent with the holding in a prior

15  decision of" the Supreme Court.  Id.

16     The prosecutor filed a sentencing memorandum in which she argued for the maximum

17  available sentence on the basis that Petitioner's "criminal history is horrendous, . . . he has been

18  convicted of eight separate felonies," and in two of the three strike offenses he "was personally

19  armed with a deadly weapon of some sort."  (RT 103.)  The prosecutor argued that Petitioner's

20  "performance on probation and parole has been abysmal, constantly picking up new felonies

21  and/or violating the terms of his probation or parole," and that he "is clearly a violent person

22  with an affinity for deadly weapons who poses a significant threat to society."  (RT 104.)

23     Defense counsel filed a sentencing memorandum in which he presented evidence that

24  Petitioner had the support of his family, that his criminal history was due to his drug addiction,

25  and that he was a good candidate for treatment and rehabilitation in that he had already been

26  accepted to an addiction treatment facility.  (RT 135.)  Defense counsel also argued that the trial

27  court should exercise its discretion to strike the prior convictions and fashion an appropriate

28  sentence of less than life in prison, based on the remoteness of the priors, which, like the current

offense, for which Petitioner would be eligible for probation but for his criminal history, were all caused by his drug addiction. (RT 136-37.) Defense counsel also argued that the priors, like the instant offense, were simple offenses which involved small amounts of property, did not involve anyone being seriously hurt, and were only elevated to robberies due to Petitioner's attempts to flee. The trial judge, in explaining his decision not to exercise his limited discretion to strike the priors, stated:

> So the first question, is this a minor felony? Well, it's not. It's not only a serious felony; it's a violent felony. So that factor goes against striking the strike.
>
> The Court then looks at the priors. How serious were the priors? Well, they weren't particularly serious in the sense that - obviously to be a strike the offense has to be a serious felony, and these I would say were all garden variety serious felonies; on the other hand, he has three of them.
>
> The next thing we look at is the remoteness of the priors. And the problem is these priors are not particularly remote. He had a strike in '91, another in '93, another in '98. Now, the one in '98, that's some time ago. On the other hand, when we look at one of the reasons there was such a gap is that he was sentenced to a significant time in prison, so there really wasn't much time when you look from the time he got out of prison until this current offense.
>
> Ultimately the Court has to look and see whether or not, in looking at the current offense, the priors, the age of the priors, and his entire background, does it appear that this defendant falls inside or outside the spirit of the three strikes law. And the problem in this case is when you look at everything, Mr. Riggins appears to be the poster child for the three strikes law. I can't say that he falls outside the spirit of the three strikes law. I would have to do some mental jujitsu to get there. I can't do that. There is no way you can look at these facts and his background and say he's not within the spirit of the three strikes law. For those reasons, I can't and won't strike the priors in this case. Recognizing the Court has the discretion, I think it would be an abuse of discretion to strike the strikes in this case.
>
> I understand the defendant has a drug problem. But he doesn't just have a drug problem. Not everyone who has a drug problem commits crimes. Not everyone who has a drug problem and commits crimes commits violent crimes, so he not only has a drug problem, he has a violent crime problem.

(RT 813-14.)

The state supreme court could have reasonably found that Petitioner's allegations (that trial counsel should have argued that the prior convictions were non-violent and for dismissal of one or two rather than all three, and should have challenged the prosecutor's statements that Petitioner had multiple violent felony convictions with a pattern of violence and an affinity for weapons), did not allege deficient performance in light of defense counsel's arguments listed

above, and in light of the trial judge's indication that he considered the prior convictions to be garden variety serious felonies, that it would be an abuse of his discretion to strike the priors, and that Petitioner "appears to be the poster child for the three strikes law." See Strickland, 466 U.S. at 687 (holding that deficient performance "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.")  Because such a finding would be consistent with Strickland, the state court's adjudication of the claim is objectively reasonable.  Id.; Richter, 131 S.Ct. at 784-86.

The state court could also have reasonably found that Petitioner had not alleged facts which, if true, would establish prejudice, because the trial judge gave careful consideration to the limits of his discretion to strike the priors.  Petitioner has not shown a reasonable probability that had trial counsel presented additional argument, the result of the sentencing proceeding would have been different.  See Strickland, 466 U.S. at 687 (holding that a reasonable probability is "a probability sufficient to undermine confidence in the outcome.")  Discovery and an evidentiary hearing are not available with respect to Claim 6 because Petitioner has not alleged facts which, if true, demonstrate he received ineffective assistance of counsel. Pinholster, 131 S.Ct. at 1398; Bracy, 520 U.S. at 908-09; Campbell, 18 F.3d at 679.

## G.    Claim 7

Petitioner alleges in Claim 7 that the use of his 1991 and 1993 robbery convictions to enhance his sentence violated Apprendi because they were based on no contest pleas which lacked jury findings on, or proper admissions to, the elements of the offenses.  (Pet. at 72-77.) Respondent answers that whether a counseled plea is denominated as a no contest or a guilty plea, it constitutes an admission to the elements of the offense. (Ans. Mem. at 32-33.) Petitioner replies that as to convictions obtained by pleas, the Apprendi exception applies only where the waiver of the trial right was knowing and intelligent, which did not occur in those two prior robbery convictions.  (Traverse at 37-40.)

Petitioner presented this claim to the state supreme court in a pro se habeas petition which was summarily denied without a statement of reasoning or citation of authority. (Lodgment No. 15 at 9; Lodgment No. 18.)  Petitioner did not present this claim to any other state court.  The

Court must determine what arguments or theories could have supported the state court's decision, and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of" the Supreme Court. Richter, 131 S.Ct. at 784-86.

As set forth above in Claims 4 and 5, and again below in Claim 13, Petitioner has not established that his prior robbery convictions were open to challenge at trial. His allegation that he did not knowingly and intelligently enter the pleas in those cases is belied by the record, which demonstrates that he had a familiarity with the criminal justice system at the time he entered those pleas, as he had already been convicted of four felonies and three misdemeanors before he was convicted of robbery for the first time in 1991. (RT 90-91.) "[W]hen determining whether a defendant has knowingly and intelligently waived his rights, a court may look to the defendant's background, conduct, and prior familiarity with the criminal justice system." Baker v. City of Blaine, 221 F.3d 1108, 1111 (9th Cir. 2000), citing Johnson v. Zerbst, 304 U.S. 458, 464 (1983); see also Parke v. Raley, 506 U.S. 20, 36 (1992) ("We have previously treated evidence of a defendant's prior experience with the criminal justice system as relevant to the question whether he knowingly waived constitutional rights.") Petitioner presents no evidence to support his allegation that his prior convictions were obtained through pleas which did not establish the elements of the offenses, or did not contain a valid waiver of his jury trial rights, and he has not shown that his prior convictions were open to attack on that basis. Lackawanna, 532 U.S. at 403-04; Blackledge, 431 U.S. at 73-74.

The state supreme court could have reasonably found that Petitioner's allegations, that the pleas in his the prior convictions did not establish the elements of robbery and do not show he knowingly waived his right to a jury trial, were insufficient to allege an Apprendi violation. Richter, 131 S.Ct. at 784-86; Lackawanna, 532 U.S. at 403-04; Apprendi, 530 U.S. at 488; Blackledge, 431 U.S. at 73-74. Petitioner has not shown good cause for discovery with respect to his prior plea agreements, and is not entitled to an evidentiary hearing, because his allegations, even if true, do not entitle him to habeas relief. Pinholster, 131 S.Ct. at 1401 n.10; Bracy, 520 U.S. at 908-09; Hayes, 301 F.3d at 1065 n.6; Campbell, 18 F.3d at 679.

## H.    Claim 8

Petitioner alleges in Claim 8 that he was denied his right to a jury trial, to present a defense, and to the effective assistance of counsel, because the trial court failed to instruct the jury sua sponte, and his trial counsel failed to request the jury be instructed, that in order to constitute robbery Petitioner's use of force or fear must have been motivated by an intent to steal. (Pet. at 78-87.) Petitioner argues that when he brandished the box cutter at Wilkerson, he did not know Wilkerson was a loss protection officer, because Wilkerson had said he worked at a golf store. (Id.) Petitioner contends the missing instruction was proper because the jury could have found that he thought he was protecting his own property from another thief when he brandished the box cutter, rather than motivated by an intent to steal. (Id.)

Respondent answers that the evidence at trial showed Petitioner threatened Wilkerson with a box cutter as they struggled over the bag containing stolen merchandise after Wilkerson had identified himself as a loss protection officer for the Gap store, and that Petitioner then left at a high rate of speed with the stolen goods. (Ans. Mem. at 33-36.) Respondent argues that Petitioner does not dispute that evidence, and has presented no evidence to the contrary, here or to the state court. (Id.)

Petitioner replies that even assuming Wilkerson identified himself as a loss protection officer prior to brandishing the box cutter, the jury could have concluded that Petitioner did not hear him do so because he was too occupied with Wilkerson's actions, or did not hear him over the loud music coming from the Gap store. (Traverse at 45.)

The aspect of this claim alleging the trial court failed to sua sponte instruct the jury was presented to the state appellate and supreme courts on direct appeal. (Lodgment Nos. 6, 8.) The Court will look through the silent denial by the state supreme court and apply the provisions of 28 U.S.C. § 2254(d) to the appellate court opinion, which stated:

> Riggins contends that the trial court erred in failing to instruct the jury on the defense theory of the case, i.e., that when Riggins struggled with Wilkerson over the duffel bag, Riggins believed he was protecting the stolen property from another thief, as opposed to a store security officer. On appeal, Riggins asserts that the trial court should have instructed the jury, sua sponte, with CALCRIM No. 3476, an instruction on the defense of property. [Footnote: CALCRIM No. 3476 provides, in relevant part: "The owner (or possessor) of (real/(or) personal) property may use reasonable force to protect that property from imminent harm."]

According to Riggins, his theory at trial was that his use of force against Wilkerson in pulling out the box cutter was motivated not by an intent to steal the merchandise, but, rather, by the desire to defend his own property (i.e., the identification card, mail and other small items in the duffel bag) and/or the stolen merchandise. Riggins acknowledges that he did not request an instruction on defense of property but nevertheless asserts that the court should have given the instruction because his attorney argued that Riggins did not have the requisite intent in using force to be convicted of robbery.

We conclude that the trial court did not err in not instructing the jury, sua sponte, on the specific defense of defense of property, since there was not substantial evidence to support that defense. In order for Riggins to have been entitled to a specific instruction on the defense of property, there would have had to have been sufficient evidence to show that Riggins's use of force against Wilkerson was done "(t)o prevent an illegal attempt by force to take or injure property *in (Riggins's) lawful possession*." (Pen.Code, § 693, italics added (lawful resistance).) However, the evidence demonstrated that the property that Riggins was purportedly defending was not property that was lawfully in his possession, but instead, was property that Riggins had illegally taken from the stores.

Although Riggins contends on appeal that he could have been protecting his own property that was also in the duffel bag (i.e. some mail, a transit card, etc.), those items were mingled with property that was clearly not in Riggins's lawful possession. Riggins simply had no right to defend *the stolen property* against someone else's attempt to possess it. He was not entitled to an instruction on defense of property, since that is not a defense to taking stolen property by force or fear. The trial court did not err in failing to instruct the jury on defense of property.

(Lodgment No. 7, People v. Riggins, No. D057957, slip op. at 8-9.)

Clearly established federal law provides that in order to establish a violation of his federal due process rights by the failure to give a requested jury instruction, Petitioner must demonstrate that the instruction should have been given, and that its omission "so infected the entire trial that the resulting conviction violates due process." Henderson v. Kibbe, 431 U.S. 145, 154 (1977), quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973). A state court's "failure to correctly instruct the jury on a defense may deprive the defendant of his due process right to present a defense." Bradley v. Duncan, 315 F.3d 1091, 1099 (9th Cir. 2002); see also United States v. Fejes, 232 F.3d 696, 702 (9th Cir. 2000) ("A defendant is entitled to have the judge instruct the jury on his theory of defense provided it is supported by law and has some foundation in the evidence."). Where the failure to give an instruction is in issue, the burden on the petitioner is "especially heavy." Kibbe, 431 U.S. at 155. Moreover, even if the trial court's failure to give the instruction violated due process, habeas relief would still not be available unless the error

had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); California v. Roy, 519 U.S. 2, 5 (1996).

Petitioner has not carried his "heavy burden" of demonstrating that the state court erred when it held he "was not entitled to an instruction on defense of property, since that is not a defense to taking stolen property by force or fear." (Lodgment No. 7, Riggins, No. D057957, slip op. at 9.)  Federal courts "are bound by a state court's construction of its own penal statutes." Aponte v. Gomez, 993 F.2d 705, 707 (9th Cir. 1993); Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."), citing Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.")  Petitioner was not deprived of a defense by the failure to give the instruction because there was no evidence that he was protecting only his own property, and the state appellate court's adjudication of this aspect of Claim 8 was neither contrary to, nor involved an unreasonable application of, clearly established federal law, and was not based on an unreasonable determination of the facts.

Even to the extent Petitioner could demonstrate it was error to fail to give the instruction, any error was clearly harmless.  Petitioner speculates that the jury could have found he did not hear Wilkerson identify himself as a loss protection officer.  However, Wilkerson testified that when he identified himself as a loss protection officer, Petitioner responded, "What are you talking about?  I didn't steal anything." (RT 72.)  Because the evidence presented at trial supported a finding that Petitioner was protecting stolen property, and there was no evidence to the contrary, the alleged instructional error could not have had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 637; Roy, 519 U.S. at 5.

Petitioner also alleges that he received ineffective assistance of counsel due to trial counsel's failure to request the instruction. (Pet. at 78.)  This aspect of the claim was presented to the state supreme court in a habeas petition. (Lodgment No. 15 at 10.)  That petition was summarily denied without citation or a statement of reasoning. (Lodgment No. 18.)  The Court must determine what arguments or theories could have supported that decision, and ask "whether

1    it is possible fairminded jurists could disagree that those arguments or theories are inconsistent

2    with the holding in a prior decision of" the Supreme Court.  <u>Richter</u>, 131 S.Ct. at 784-86.

3         As set forth above, Petitioner has not established that the instruction should have been

4    given or that the failure to give the instruction deprived him of an available defense.  Any

5    attempt by trial counsel to request such an instruction would have been futile, and Petitioner

6    cannot demonstrate that his trial counsel was deficient in failing to request the instruction.  <u>See</u>

7    <u>Strickland</u>, 466 U.S. at 687 (holding that deficient performance "requires showing that counsel

8    made errors so serious that counsel was not functioning as the 'counsel' guaranteed the

9    defendant by the Sixth Amendment.")  Even assuming counsel did not have a tactical reason for

10   not requesting the instruction, Petitioner cannot establish prejudice because the instruction was

11   neither necessary nor appropriate.   <u>See</u> <u>Richter</u>, 131 S.Ct. at 791 ("Representation is

12   constitutionally ineffective only if it 'so undermined the proper functioning of the adversarial

13   process' that the defendant was denied a fair trial."), quoting <u>Strickland</u>, 466 U.S. at 686.

14   Accordingly, habeas relief is denied as to the ineffective assistance aspect of Claim 8.

15   **I.    Claim 9**

16        Petitioner alleges in Claim 9 that he received ineffective assistance of counsel when trial

17   counsel made no effort to challenge the restitution fine imposed as part of his sentence.  (Pet.

18   at 88-96.)  Respondent answers that challenges to restitution orders are not cognizable on federal

19   habeas.  (Ans. Mem. at 37-38.)

20        This claim was presented to the state supreme court in a pro se habeas petition and

21   summarily denied without a statement of reasoning or citation of authority.  (Lodgment No. 15

22   at 10-11; Lodgment No. 18.)  This Court must determine what arguments or theories could have

23   supported the state court's decision and "whether it is possible fairminded jurists could disagree

24   that those arguments or theories are inconsistent with the holding in a prior decision of" the

25   Supreme Court.  <u>Richter</u>, 131 S.Ct. at 784-86.

26        This Court is empowered to grant habeas relief only where Petitioner has shown that he

27   is in custody in violation of the federal constitution, laws or treaties.  28 U.S.C. § 2254.  The

28   Ninth Circuit has held that claims challenging restitution fines are not cognizable on federal

habeas because such claims do not allege that the petitioner is in custody in violation of the federal constitution, laws or treaties, even where the petitioner is in physical custody.  <u>Bailey v. Hill</u>, 599 F.3d 976, 981 (9th Cir. 2010); <u>see also</u> <u>United States v. Thiele</u>, 314 F.3d 399, 400 (9th Cir. 2002) (holding that claim challenging restitution fine cannot be brought on federal habeas under 28 U.S.C. § 2255.  The state supreme court's silent denial of this claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law.

**J.    Claim 10**

Petitioner alleges in Claim 10 that the jury was improperly instructed they were able to draw an inference of consciousness of guilt from evidence that Petitioner fled, or tried to flee, immediately after the crime was committed, or tried to hide evidence.  (Pet. at 97-104.)  He contends that no evidence was presented to support such an instruction.  (<u>Id</u>.)

Respondent answers that the state appellate court's reasoned opinion rejecting this claim, on the basis that sufficient evidence existed to support the instruction, was neither contrary to, nor involved an unreasonable application of, clearly established federal law, and was not based on an unreasonable determination of the facts.  (Ans. Mem. at 38-44.)  Petitioner replies that the state court's findings are erroneous and unsupported by the record.  (Traverse at 49-50.)

Petitioner presented this claim to the state appellate and supreme courts on direct appeal.  (Lodgment Nos. 6, 8.)  The Court will look through the silent denial by the state supreme court and apply the provisions of 28 U.S.C. § 2254(d) to the appellate court opinion, which stated:

> Riggins contends that the trial court erred in giving CALCRIM No. 371, over his attorney's objection, because there was no showing that he hid his duffel bag.  CALCRIM No. 371 allows the jury to consider whether efforts by a defendant to suppress or hide evidence raised an inference of consciousness of guilt.  The written instruction that the court gave to the jury was as follows: "If the defendant tried to hide evidence, that conduct may show that he was aware of his guilt.  If you conclude that the defendant made such an attempt, it is up to you to decide its meaning and importance.  However, evidence of such an attempt cannot prove guilt by itself."
>
> "A defendant's willful suppression of evidence, or willful attempt to suppress evidence, is admissible to prove consciousness of guilt." (*People v. Edelbacher* (1989) 47 Cal.3d 983, 1007, citing Evid.Code, § 413.)  "'It is an elementary principle of law that before a jury can be instructed that it may draw a particular inference, evidence must appear in the record which, if believed by the jury, will support the suggested inference. (Citation.) (¶) Whether or not any given set of facts may constitute suppression or attempted suppression of evidence

from which a trier of fact can infer a consciousness of guilt on the part of a defendant is a question of law.  Thus in order for a jury to be instructed that it can infer a consciousness of guilt from suppression of adverse evidence by a defendant, there must be some evidence in the record which, if believed by the jury, will sufficiently support the suggested inference.' (Citation.)" (*People v. Hart* (1999) 20 Cal.4th 546, 620 (*Hart* ).)

On appeal, a reviewing court looks at the record to determine whether there is substantial evidence supporting the trial court's decision to give an instruction on an attempt to hide evidence.  (*Hart*, *supra*, 20 Cal.4th at p. 620.)

Riggins contends that there was no evidence from which the jury could have inferred that he hid or attempted to hide evidence.  According to Riggins, the fact that he did not have the bags with him at the moment he was apprehended "does not lead to the inference that he suppressed evidence."  The bags were found underneath the rear bumper of a car that was located toward the entrance to the northern driveway of the car dealership lot, and Riggins was apprehended some distance away from the bags, in an area described as the east end of the parking lot, toward the back of the dealership.  The parking lot was filled with approximately 60 cars.  This constitutes substantial evidence to support the trial court's decision to give the instruction regarding an attempt to hide evidence.  The jury could have reasonably inferred from the fact that Riggins placed the stolen merchandise behind a car in the large dealership and then left the merchandise while he headed off in another direction, that Riggins was attempting to hide that evidence and distance himself from the stolen merchandise.  The trial court thus did not err in instructing the jury that it could infer consciousness of guilt from Riggins's attempt to hide evidence in this case.

. . . .

Riggins contends that because there was no evidence that he fled, the trial court erred in instructing the jury that it could infer his guilt from his flight from police.  We disagree.

Over defendant's objection, the trial court instructed the jury with CALCRIM No. 372 as follows: "If the defendant fled or tried to flee immediately after the crime was committed, that conduct may show that he was aware of his guilt.  If you conclude that the defendant fled or tried to flee, it is up to you to decide the meaning and importance of that conduct.  However, evidence that the defendant fled or tried to flee cannot prove guilt by itself."

Evidence that a defendant tried to hide after the crime is relevant to show consciousness of guilt.  (*People v. Vu* (2006) 143 Cal.App.4th 1009, 1030.)  A flight instruction "'is proper where the evidence shows that the defendant departed the crime scene under circumstances suggesting that his movement was motivated by a consciousness of guilt.' (Citation.)" (*People v. Smithey* (1999) 20 Cal.4th 936, 982.)  Further, "'flight requires neither the physical act of running nor the reaching of a far-away haven.  (Citation.)  Flight manifestly does require, however, a purpose to avoid being observed or arrested.' (Citation.)" (*People v. Visciotti* (1992) 2 Cal.4th 1, 31.)

On appeal, a reviewing court determines whether there was sufficient evidence presented from which a jury could have reasonably inferred that the defendant fled after the crime.  (*People v. Lutz* (1980) 109 Cal.App.3d 489, 498.)

/ / /

Riggins argues that there was insufficient evidence of flight to warrant the flight instruction. He contends that he did not run away from the store or flee in a vehicle, but instead, simply walked through the mall and across the street. He also suggests that the police found him walking and standing. Contrary to Riggins's contentions, there was abundant evidence of flight. Wilkerson and Hunter watched as Riggins "fled" the scene at a "fairly high rate of speed." In addition, Riggins went straight into a car dealership, where he maneuvered between cars and at one point moved into a position where an officer's view of him was blocked by a vehicle. All of this is sufficient evidence of flight from which the jury could reasonably infer that Riggins was attempting to avoid being arrested.

In addition, the instruction left it up to the jury to determine whether defendant's conduct constituted flight and, if so, what the "meaning and importance" of that conduct was. The jury was told that if it did not find that Riggins's departure from the scene of the robbery constituted flight immediately after the commission of a crime, it should disregard CALCRIM No. 372. On the other hand, if the jury found that Riggins was attempting to flee, the instruction provided Riggins some amount of protection by informing the jury it could not infer guilt from his flight, alone. It is clear that the trial court did not err by instructing the jury with CALCRIM No. 372 under these circumstances.

(Lodgment No. 7, People v. Riggins, No. D057957, slip op. at 10-13.)

In order to show a federal due process violation arising from an instructional error, Petitioner must demonstrate that the instruction "so infected the entire trial that the resulting conviction violates due process." McGuire, 502 U.S. at 72, quoting Cupp, 414 U.S. at 147. "In a habeas corpus case, a jury instruction requires reversal only if it so offended established notions of due process as to deprive (the defendant) of a constitutionally fair trial." Turner v. Marshall, 63 F.3d 807, 819 (9th Cir. 1995) (internal quotation marks omitted), overruled in part on other grounds by Tolbert v. Page, 182 F.3d 677 (9th Cir. 1999) (en banc). "It is well established that the instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." McGuire, 502 U.S. at 72, quoting Cupp, 414 U.S. at 147. A permissive inference instruction "is constitutional so long as it can be said 'with substantial assurance' that the inferred fact is 'more likely than not to flow from the proved fact on which it is made to depend.'" United States v. Rubio-Villareal, 967 F.2d 294, 296 (9th Cir. 1992), quoting Ulster County v. Allen, 442 U.S. 140, 166 n.28 (1979).

It was objectively reasonable for the state appellate court to find that an inference of guilt could be drawn from Petitioner's actions of leaving the scene at a "fairly high rate of speed" with stolen goods after being confronted by the loss prevention officer. The Court can say with

"substantial assurance" that a jury could infer a consciousness of guilt by those actions.  <u>Rubio-Villareal</u>, 967 F.2d at 296.  The same can be said about Petitioner's action of thereafter going to the car dealership, where he maneuvered between cars to a position where an officer's view of him was blocked, and where he attempted to evade an officer who spotted him, changed his appearance, and abandoned the stolen merchandise.  <u>Id.</u>  The state court's adjudication of this claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law, and was not based on an unreasonable determination of the facts.

**K.     Claim 11**

Petitioner alleges in Claim 11 that the prosecutor committed misconduct during the bench trial on the prior conviction allegations, and that trial counsel rendered ineffective assistance when he failed to object to the prosecutor's statements.  (Pet. at 105-10.)  Specifically, he contends the prosecutor improperly argued that although there was no fingerprint evidence to establish that Petitioner had suffered the 1993 robbery conviction, his admission in his 1998 robbery case that he had suffered robbery convictions in 1991 and 1993 was sufficient to prove the truth of the 1993 prior conviction allegation.  (<u>Id.</u>)  Petitioner contends the documents did not reflect such an admission, and that he made no such admission.  (<u>Id.</u>)

Respondent answers that the record does not establish the prosecutor was incorrect in her assertion, and there was therefore no misconduct.  (Ans. Mem. at 44-46.)  Respondent also contends that there was no prejudice because Petitioner does not allege or show that he was not convicted of the 1993 prior conviction.  (<u>Id.</u> at 46.)

Petitioner replies that the abstract of judgement for his 1998 robbery conviction, which is attached to the Petition as Exhibit B, indicates the trial judge there <u>found</u> he had committed the 1991 and 1993 convictions, not that he had <u>admitted</u> to having suffered those convictions.  (Traverse at 54-55.)  He argues that the trial judge here would probably have found the 1993 prior conviction allegation not true absent the prosecutor's misrepresentation.  (<u>Id.</u>)

Petitioner presented Claim 11 to the state supreme court in his second pro se habeas petition filed in that court.  (Lodgment No. 17.)  The state supreme court denied that petition, which contained only that one claim, with a order which stated: "The petition for writ of habeas

1   corpus is denied.  (See *In re Clark* (1993) 5 Cal.4th 750, 767-769; *People v. Duvall* (1995) 9

2   Cal.4th 464, 474.)"  (Lodgment No. 19.)

3          Although Respondent contends that AEDPA deference should apply to this claim (Ans.

4   Mem. at 46), it is clear that it was never adjudicated on the merits in state court, because the only

5   state court it was presented to denied it on procedural grounds.  See Pombrio v. Hense, 631

6   F.Supp.2d 1247, 1251-52 (C.D. Cal. 2009) (explaining that citations to Clark and Duvall point

7   to correctable defects and therefore render such claims unexhausted in federal court); Coleman

8   v. Thompson, 501 U.S. 722, 735 n.1 (1991) (holding that a procedural default arises when "the

9   court to which the petitioner would be required to present his claims in order to meet the

10  exhaustion requirement would now find the claims procedurally barred."); Walker v. Martin, 562

11  U.S. ___, 131 S.Ct. 1120, 1125-31 (2011) (holding that California's timeliness requirement

12  providing that a prisoner must seek habeas relief without "substantial delay" as "measured from

13  the time the petitioner or counsel knew, or should reasonably have known, of the information

14  offered in support of the claim and the legal basis for the claim," supports a federal procedural

15  default).  Respondent has waived the affirmative defense of procedural default by failing to raise

16  it in the Answer.  Trest v. Cain, 522 U.S. 87, 89 (1997).  Although the Court has discretion to

17  raise the procedural default issue sua sponte where "to do so serves the interests of justice,

18  comity, federalism, and judicial efficiency," Windham v. Merkle, 163 F.3d 1092, 1100 (9th Cir.

19  1998), the Court declines to do so, because under a de novo review of the claim it is clearly

20  without merit.  See Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002) ("Procedural bar

21  issues are not infrequently more complex than the merits issues presented by the appeal, so it

22  may well make sense in some instances to proceed to the merits if the result will be the same.")

23         Clearly established federal law provides that "[t]o constitute a due process violation, the

24  prosecutorial misconduct must be 'of sufficient significance to result in the denial of the

25  defendant's right to a fair trial.'"  Greer v. Miller, 483 U.S. 756, 765 (1987), quoting United

26  States v. Bagley, 473 U.S. 667, 676 (1985).  The alleged misconduct must be reviewed in the

27  context of the entire trial.  Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974).

28  / / /

Petitioner submits the abstract of judgment for the 1998 conviction which indicates that he was found guilty, pursuant to a plea, of robbery, and the sentencing judge found that he had suffered two prior convictions.  (Pet. Ex. B.)  He contends he did not admit to the 1991 and 1993 prior convictions when entering his guilty plea in the 1998 case, and if his trial counsel had objected to the prosecutor's contention at sentencing that the 1998 conviction documents showed Petitioner had admitted to having suffered the 1993 conviction, the trial judge might have found that allegation unproven, particularly in light of the lack of a fingerprint card for the 1993 conviction.  However, the prosecutor did not argue that Petitioner had admitted to the truth of the prior conviction allegations when entering his plea, she argued that the abstract of judgment for the 1998 case was sufficient proof that Petitioner had been convicted of those prior convictions because it showed that his sentence in that case had been enhanced by those prior convictions.  (RT 463-64.)  Defense counsel argued that to the extent Petitioner had admitted the two prior conviction allegations when entering his plea in the 1998 case, such an admission should not be relied upon due to the summary and pragmatic nature of the plea bargaining process, adding:

> Give you an example, if I have a client and he has four prison priors and the offer is plea to the low term on the prison prior, I may not as defense counsel, go over all the prison packets and see which one is defective, I may just admit one.  [¶] To say later on that that is proof beyond a reasonable doubt that that person suffered that one, is little bit less than reasonable doubt.

(RT 465.)

The trial judge had before him more than just the 1998 abstract of judgment which showed Petitioner's 1993 conviction had been used in the 1998 case as a sentence enhancement. He had the photograph of the person who had been convicted in the 1993 case, and was able to compare it to Petitioner in the courtroom, as well as to photographs in Petitioner's prison packet and his 1991 and 1998 convictions.  He also had expert testimony that Petitioner's fingerprints matched the fingerprints of the person convicted of the 1991 and 1998 priors.

Petitioner has not alleged facts which, if true, establish prosecutorial misconduct.  The prosecutor's argument that the records of Petitioner's 1998 robbery conviction could be used as evidence to support a finding that Petitioner had been convicted of the 1993 robbery, was neither

erroneous nor misleading and did not deny him his right to a fair trial on the prior conviction allegations. Greer, 483 U.S. at 765. Petitioner has also failed to allege ineffective assistance of counsel because, as set forth above, trial counsel argued against using the documents for that purpose. See Richter, 131 S.Ct. at 791 ("Representation is constitutionally ineffective only if it 'so undermined the proper functioning of the adversarial process' that the defendant was denied a fair trial."), quoting Strickland, 466 U.S. at 686. Based on a de novo review of the record with respect to this claim, Petitioner has failed to allege facts which, if true, demonstrate prosecutorial misconduct or ineffective assistance of counsel.

**L.     Claim 12**

Petitioner alleges in Claim 12 that he received ineffective assistance of counsel when trial counsel stipulated at the preliminary hearing, without his consent, that Petitioner had previously been convicted of a theft related offense, rendering the petty theft charge a felony. (Pet. at 111-16.) Respondent answers that there is no federal constitutional right to a preliminary hearing, and therefore no federal claim can be presented based on errors at a preliminary hearing. (Ans. Mem. at 46-48.) Respondent also argues Petitioner cannot show prejudice because he has not established that the prior theft related conviction does not exist, and the prosecution could have proven its existence absent the stipulation. (Id.)

Petitioner replies that he has a Sixth Amendment right to adequate representation at a preliminary hearing. (Traverse at 59.) He also argues that prejudice is presumed where, as here, counsel failed entirely to subject the prosecution's case to adversarial testing. (Id. at 59-60.)

This claim was presented to the state supreme court in a pro se habeas petition and summarily denied without a statement of reasoning or citation of authority. (Lodgment No. 15 at 5; Lodgment No. 18.) Because Petitioner did not present this claim to the lower courts, this Court must determine what arguments or theories could have supported the state court's decision, and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of" the Supreme Court. Richter, 131 S.Ct. at 784-86.

/ / /

At the close of testimony at the preliminary hearing, the following exchange took place:

The Court:          Okay.  And let me ask you: Do we have a stipulation on the prior?

Defense Counsel:    As to the petty theft with a prior?

The Court:          Yes.

Defense Counsel:    Yes, your Honor.

Prosecutor:         I have - I was prepared to introduce - I have a certified prior that I can introduce as an exhibit.

The Court:          All right.

Defense Counsel:    I just stipulated to it, your Honor.  The reason why I did is I do have an attached copy.  So we'll stipulate there was a prior given that the court has heard this information.

The Court:          Okay.  I appreciate that.  We'll accept the stipulation.

(Lodgment No. 2, Preliminary Hearing Tr. at 56-57.)

Thus, the prosecutor was prepared to introduce a certified copy of one of Petitioner's six theft-related prior convictions (see CT 90-92), and defense counsel was in possession of a copy of that document when he stipulated.  Petitioner is therefore incorrect that his counsel entirely failed to subject the prosecution's case to adversarial testing, as counsel was in possession of the document the prosecutor would have relied upon absent the stipulation, and explained on the record that that was the reason he stipulated.  The state supreme court could  have reasonably denied this claim on the basis that trial counsel's stipulation did not amount to deficient performance. See Richter, 131 S.Ct. at 791 ("Representation is constitutionally ineffective only if it 'so undermined the proper functioning of the adversarial process' that the defendant was denied a fair trial."), quoting Strickland, 466 U.S. at 686.  The state court could also have reasonably found Petitioner was not prejudiced by the stipulation because there is no dispute Petitioner suffered a theft related conviction prior to the preliminary hearing in this case.  Id.

**M.      Claim 13**

Petitioner alleges in Claim 13 that use of his prior convictions to enhance his sentence was a violation of the Contracts Clause of the United States Constitution, and that he received

1    ineffective assistance of counsel when trial counsel failed to object on that basis.  (Pet. at 117-

2    28.)  He alleges that when the Three Strikes law was amended in 1994, it greatly increased the

3    potential future enhancement liability arising from his 1991 and 1993 pleas.  (Id.)

4         Respondent answers that the legal obligations of Petitioner's prior plea agreements have

5    long since been fulfilled, and that counsel was not deficient in failing to raise such a meritless

6    objection.  (Ans. Mem. at 48-50.)  Petitioner replies that the 1994 amendment to the Three

7    Strikes law impaired his preexisting contracts.  (Traverse at 62-66.)

8         This claim was presented to the state supreme court in a pro se habeas petition and

9    summarily denied without a statement of reasoning.  (Lodgment No. 15 at 6; Lodgment No. 18.)

10   Petitioner did not present this claim to the lower courts.  This Court must determine what

11   arguments or theories could have supported the state court's decision, and then "ask whether it

12   is possible fairminded jurists could disagree that those arguments or theories are inconsistent

13   with the holding in a prior decision of" the Supreme Court.  Richter, 131 S.Ct. at 784-86.

14        The Contracts Clause of the United States Constitution provides that; "No state shall . . .

15   pass any . . . Law impairing the Obligation of Contracts . . ."  U.S. Const., art. I, § 10, cl. 1.

16   "Laws which subsist at the time and place of the making of a contract, and where it is to be

17   performed, enter into and form a part of it, as fully as if they had been expressly referred to or

18   incorporated in its terms."  Farmers Bank v. Federal Reserve Bank, 262 U.S. 649, 660 (1923);

19   see also Ricketts v. Adamson, 483 U.S. 1, 6 n.3 (1987) (holding that claims that a plea

20   agreement has been breached are analyzed under state contract law).  "Although the language

21   of the Contract Clause is facially absolute, its prohibition must be accommodated to the inherent

22   police power of the State 'to safeguard the vital interests of its people.'"  Energy Reserves

23   Group, Inc. v. Kansas Power and Light Co., 459 U.S. 400, 410 (1983), quoting Home Bldg. &

24   Loan Ass'n v. Blaisdell, 290 U.S. 398, 434 (1934).

25        As discussed above with respect to Claim 1, the Ninth Circuit has found that where a

26   promise was made in a plea bargain to use that conviction as only one strike in any future

27   sentencing proceedings, that is a contractual provision entitled to protection against breach of

28   promise.  Davis, 446 F.3d at 962-63.  The Davis court, however, distinguished that type of

provision from the case here, where Petitioner alleges his plea bargain merely incorporated then-existing law which was later amended to provide that prior convictions could be used to enhance a sentence for a future crime.  Id. at 962 ("We recognize that, in California, contracts (including plea bargains), are 'deemed to incorporate and contemplate not only the existing law but the reserve power of the state to amend the law or enact additional laws.'"), quoting Gipson, 117 Cal.App.4th at 1070; see also United States v. Brownlie, 915 F.2d 527, 528 (9th Cir. 1990) ("The possibility that a defendant will be convicted of another offense in the future and will receive an enhanced sentence based on an instant conviction is not a direct consequence of a guilty plea," and a plea is voluntary even if defendant is not advised of that collateral consequence.)

The state supreme court here could have reasonably rejected Claim 13 on the basis that no contractual obligation was impaired by the use of Petitioner's 1991 and 1993 robbery convictions to enhance his sentence in this case, and could have reasonably found that any such objection by trial counsel would have been futile, because the plea bargains in those cases incorporated the reserve power of California to enact the Three Strikes law.  Davis, 446 F.3d at 962-63.  The state court's adjudication of this claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law.

**N.      Claim 2**

Petitioner alleges in Claim 2 that he received ineffective assistance of counsel because his appellate counsel failed to raise on appeal Claims 4, 5, 6, 9 and 12 presented here.  (Pet. at 26-29.)  Respondent answers that the claims Petitioner contends should have been raised on appeal are without merit, and that the appellate court's denial of Claim 2 on that basis is objectively reasonable.  (Ans. Mem. at 22-23.)

Petitioner presented Claim 2 to the state supreme court in his pro se habeas petition, which was summarily denied without a statement of reasoning or citation of authority. (Lodgment No. 15 at 4; Lodgment No. 18.)  Petitioner presented the same claim to the state appellate court in his pro se habeas petition. (Lodgment No. 12 at 23-24.)  The Court will look through the silent denial by the state supreme court and apply the provisions of 28 U.S.C.

1   § 2254(d) to the appellate court opinion.  <u>Ylst</u>, 501 U.S. at 803-06.

2        The state appellate court denied the claim, stating:

3        Petitioner also has not shown ineffective assistance of appellate counsel.  Counsel
4        is not required to bring non-meritorious claims on appeal.  Petitioner's allegations
         do not state a prima facie claim for relief.  (See *People v. Duvall, supra*, 9 Cal.4th
5        at p. 474.)

6   (Lodgment No. 13, <u>In re Riggins</u>, No. D062731, order at 2.)

7        As discussed above, Claims 4, 5, 6, 9 and 12, are without merit.  Thus, appellate counsel's

8   failure to raise them on direct appeal was neither deficient nor prejudicial.  <u>See</u> <u>Turner v.</u>

9   <u>Calderon</u>, 281 F.3d 851, 872 (9th Cir. 2002) (explaining that the <u>Strickland</u> standard applies to

10  claims of ineffective assistance of appellate counsel); <u>Baumann v. United States</u>, 692 F.2d 565,

11  572 (9th Cir. 1982) (stating that an attorney's failure to raise a meritless legal argument does not

12  constitute ineffective assistance); <u>Gustave v. United States</u>, 627 F.2d 901, 906 (9th Cir. 1980)

13  ("There is no requirement that an attorney appeal issues that are clearly untenable.")

14       Accordingly, the state appellate court's opinion denying Claim 2 on the basis that

15  appellate counsel was not required to raise meritless claims, is neither contrary to, nor involves

16  an unreasonable application of, clearly established federal law, and is not based on an

17  unreasonable determination of the facts.  Habeas relief is denied as to Claim 2.

18  **O.    Motion for Discovery and Evidentiary Hearing.**

19       As set forth throughout this Order, Petitioner's allegations, even if true, do not entitle him

20  to federal habeas relief.  Thus, neither discovery nor an evidentiary hearing are necessary nor

21  warranted.  <u>Pinholster</u>, 131 S.Ct. at 1398; <u>Bracy</u>, 520 U.S. at 908-09; <u>Campbell</u>, 18 F.3d at 679.

22  Petitioner's Motion for discovery and an evidentiary hearing is **DENIED**.

23  **P.    Certificate of Appealability**

24       Petitioner has also filed a Motion for a Certificate of Appealability.  (ECF No. 34.)  "A

25  certificate of appealability may issue . . . only if the applicant has made a substantial showing

26  of the denial of a constitutional right."  28 U.S.C. § 2253(c).  "Where a district court has rejected

27  the constitutional claims on the merits, the showing required to satisfy section 2253(c) is

28  straightforward: The petitioner must demonstrate that reasonable jurists would find the district

court's assessment of the constitutional claims debatable or wrong." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).  A claim may also warrant a Certificate of Appealability when the "questions are adequate to deserve encouragement to proceed further." <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n. 4 (1983) (citation omitted), <u>superseded on other grounds by</u> 28 U.S.C. § 2253(c)(2).

Although the Court is mindful of the "relatively low" threshold for granting a certificate of appealability, <u>Jennings v. Woodford</u>, 290 F.3d 1006, 1010 (9th Cir. 2002), and that "the petitioner need not show that he should prevail on the merits," <u>Lambright v. Stewart</u>, 220 F.3d 1022, 1025 (9th Cir. 2000), quoting <u>Barefoot</u>, 463 U.S. at 893 n.4, the Court finds that Petitioner's claims do not warrant a Certificate of Appealability.  Accordingly, the Court **DENIES** Petitioner's Motion for a Certificate of Appealability.

**VI.**

**<u>CONCLUSION AND ORDER</u>**

For all of the foregoing reasons, **IT IS HEREBY ORDERED** that: (1) Petitioner's Motion for Discovery and Evidentiary Hearing [ECF No. 12] is **DENIED**; (2) the Petition for a writ of habeas corpus [ECF No. 1] is **DENIED**; and (3) Petitioner's Motion for a Certificate of Appealability [ECF No. 34] is **DENIED**.  The Clerk of Court shall enter judgment accordingly.

DATED:  August 18, 2014

HON. GONZALO P. CURIEL
United States District Judge